UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

     Plaintiff,

v.                                                    Case No.  13-11728

Funds From Fifth Third Bank Account          Sean F. Cox
#0065006695 In The Amount Of Fifty Nine      United States District Court Judge
Thousand Six Hundred Seventy Five Dollars
And Three Cents ($59,675.03), *et al.*,

     Defendants in Rem.

_____/

## OPINION & ORDER

This civil forfeiture action is currently before the Court on two motions: 1) a Motion to Dismiss the Complaint for Forfeiture, filed by Claimant China Lite Restaurant – Gas Lite Lounge, Inc. ("China Lite"), which this Court converted into a Motion for Summary Judgment; and 2) a Motion to Dismiss Claimant's Amended Counterclaim, filed by the Government.  The parties have briefed the issues, and filed supplemental briefs at the Court's direction, and the Court heard oral argument on October 31, 2013.[1]

For the reasons set forth below, this Court concludes that the Government did not comply with the 90-day requirement for filing its Forfeiture Complaint and denies its request for an extension of time.  Accordingly, this Court shall GRANT China Lite's Motion to Dismiss/Motion for Summary Judgment and shall DISMISS the Forfeiture Complaint WITH PREJUDICE and ORDER THE PROMPT RETURN of the seized funds to China Lite.  The

_____

[1]The Government also filed an additional supplemental brief after the hearing.

1

Court shall also GRANT China Lite's request that it be permitted to file a motion seeking

attorney fees and costs.

In addition, the Court shall GRANT the Government's Motion to Dismiss Claimant's

Amended Counterclaim and shall DISMISS China Lite's Counterclaims WITHOUT

PREJUDICE.

## BACKGROUND

### A.  Factual Background

The Government seized the funds at issue from China Lite's bank accounts, which total

$135,595.66, on November 19, 2012.  Thereafter, Mr. and Mrs. Cheung, who own China Lite,

obtained Stephen Dunn ("Dunn") as their counsel.  No criminal charges have been filed against

China Lite or either of the Cheungs.

China Lite's Motion states that Dunn called and spoke with Kathleen Robinson

("Robinson"), the I.R.S.'s Asset Forfeiture Coordinator in Detroit, and Assistant United States

Attorney Jonathan Grey ("Grey").  (China Lite's Brief at 10).  Dunn states that Robinson told

him his clients could submit a claim.  He states that Grey would not discuss the matter over the

phone but said he would meet in person.

It is undisputed that Dunn and Sioe Cheung met with Grey at his office on December 4,

2012.  (*See* 10/31/13 Hrg. Tr.).  Dunn states that he terminated the meeting, after concluding that

two special agents of the I.R.S. Criminal Investigation Division, who also attended the meeting,

were attempting to interrogate Mrs. Cheung.  (China Lite's Brief at 10).

Dunn submitted a claim on behalf of China Lite on December 7, 2012.  It was directed to

the attention of Robinson.  (*See* Ex. 1 to China Lite's Br.).  Dunn signed the claim under the

2

penalty of perjury.  Neither of China Lite's owners signed the claim under oath.  That claim was received by the I.R.S. on December 10, 2012.  (*See* Docket Entry No. 19-2).

On December 12, 2012, Dunn received a telephone call from Robinson.  (Dunn Affidavit at ¶ 3).  Robinson advised Dunn that the I.R.S. had received the Claim dated December 7, 2012, which Dunn had submitted on behalf of China Lite.  She stated that the form of the claim was unacceptable and that she was returning it.  (*Id.*).

On December 27, 2012, Dunn received a letter from Erick Martinez, Special Agent in Charge, Detroit Office, stating:

> On December 12, 2012 a claim was received from you on behalf of your client China Lite Restaurant for the above seized assets.  Your claim is being denied because it is insufficient and does not meet *our requirements.*
>
> If you have any questions you may contact Kathleen Robinson at 313-234-2478.

(Docket Entry No. 33-3) (emphasis added).  That letter did not tell China Lite how or why its claim was deemed insufficient.

On December 27, 2012, Sioe Cheung received a four-page letter from Erick Martinez, giving her notice that administrative proceedings have been initiated to perfect forfeiture of the accounts at issue.  (Docket Entry No. 33-4).  That letter advised that any claim to the funds must be received by January 31, 2013, *and suggested that any claim be sent by certified mail, return receipt requested.*

On January 15, 2013, Dunn submitted another claim on behalf of China Lite, this time using the form provided to him by the I.R.S. and having Sioe Cheung, China Lite's President, sign the claim under oath.  (*See* Ex. 2 to China Lite's Motion).  Dunn also sent this second claim by certified mail, return receipt requested, addressed to the attention of Robinson.  The return

3

indicates that the claim was received by the agency on January 16, 2013.  (*See* Ex. 2 to China Lite's Br.; Docket Entry No. 19-1).

In response to China Lite's Motion to Dismiss, the Government submitted a Declaration from Veronica Kyrakides, Special Agent, Backup Asset Forfeiture Coordinator, I.R.S., Criminal Investigation Division.  (*See* Ex. 3 to Govt.'s Response). That Declaration states, in pertinent part:

> 5.    Mail directed to IRS-CI at 985 Michigan Avenue, Room 251, Detroit, MI 48226 is received in the mailroom on-site and then delivered to the particular individual or division named as the addressee.
> 6.    Upon receipt of incoming mail, the named recipient opens the mail and stamps it, indicating the date that the mail was received in the office.
> 7.    Claims transferred to the United States Attorney's Office for disposition include the date stamp indicating receipt in the office.

(Kyrakides Decl.).  The Government also submitted a copy of Dunn's letter enclosing the second claim and it is stamped by someone as "Received Jan 17, 2013." (Ex. 4 to Govt.'s Resp.).  It also submitted a copy of a letter from the I.R.S. referring the matter to A.U.S.A. Julie Beck – dated January 25, 2013 – which states that the claim was "received by this office" "on January 17, 2013."  (Ex. 5 to Govt.'s Br.). That referral letter did not reference the claim filed by China Lite in December of 2012.

**B.    Procedural Background**

A.U.S.A. Grey initiated this forfeiture action on behalf of the Government by filing a Complaint for Forfeiture on April 17, 2013.  (D.E. No. 1).

The Complaint states that this is an in Rem civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and 31 U.S.C. § 5317.   The Complaint identifies the Defendants in rem as: 1) Funds from Fifth Third Bank Account #0065006695 in the amount of fifty nine thousand six

4

hundred seventy five dollars and three cents ($59,675.03) in the name of China Lite Restaurant;

and 2) funds from Fifth Third Bank Account #0065010611 in the amount of seventy five

thousand nine hundred twenty dollars and sixty three cents ($75,920.63) in the name of China

Lite Restaurant.

"The defendant funds were seized on or about November 19, 2012 by Special Agents of the

Internal Revenue Service – Criminal Investigation (IRS-CI) pursuant to a federal seizure

warrant."  (Compl. at ¶ 7).

It brings the action pursuant to 31 U.S.C. § 5317 and 18 U.S.C. § 981(a)(1)(A).  (Compl.

at ¶ 1).  31 U.S.C. § 5317 governs "Search and forfeiture of monetary instruments" and provides,

in pertinent part, for civil forfeiture:

> (2) Civil forfeiture.  – Any property involved in a section of 5313, 5316, or *5324*
> of this title, or any conspiracy to commit such violation, and any property
> traceable to any such violation or conspiracy, may be seized and forfeited to the
> United States in accordance with the procedures governing civil forfeitures in
> money laundering cases pursuant to 981(a)(1)(A) of title 18, United States Code.

31 U.S.C. § 5317(c)(2) (emphasis added).  Here, the Complaint for Forfeiture alleges that the

defendant funds are property involved in structuring in violation of 31 U.S.C. § 5324(a)(3),

which prohibits structuring or assisting in structuring, or attempting to structure or assisting in

structuring, any transaction with one or more domestic financial institutions, for the purpose of

evading the reporting requirements of §5313(a).

The Complaint asserts that forfeiture of the defendant funds as property involved in

structuring in violation of 31 U.S.C. § 5324 is supported by a preponderance of the evidence.  It

sets forth the factual basis for the alleged structuring violations at pages four through six of the

Complaint.

On May 6, 2013, Claimant China Lite Restaurant ("China Lite") filed an "Answer To Complaint For Forfeiture" (D.E. No. 5) and demand for a jury trial. (Docket Entry No. 7).

China Lite filed a Motion to Dismiss on May 6, 2013. (D.E. No. 8). In that motion, China Lite seeks to dismiss this forfeiture action as untimely. Its motion states that China Lite mailed an initial claim on December 7, 2012.

On May 13, 2013, China Lite filed an Amended Answer To Complaint For Forfeiture that also purported to assert "counterclaims" against the United States. (D.E. No. 11). On May 15, 2013, China Lite filed an "Amended Counterclaim" that purports to assert the following counterclaims against the United States: 1) "Indebitatus Assumpit" (Count I); 2) "Administrative Procedures Act" (Count II); and 3) "Conversion" (Count III).

On May 28, 2013, the Government filed a Motion to Dismiss Claimant's Amended Counterclaim. (D.E. No. 20).

On May 28, 2013, the Government also filed its brief[2] opposing China Lite's Motion to Dismiss. In that response, however, the Government failed to address China Lite's December 7, 2012 claim or how the filing of this forfeiture action could be considered timely given that submission. As result, on September 9, 2013, this Court issued an order requiring supplemental briefing by the parties. (Docket Entry No. 31).

**Standard of Decision**

---

[2]China Lite filed a motion asking the Court to strike the Government's brief as untimely and/or because the Government did not file a counter-statement of material facts (which is required for summary judgment motions, but not motions to dismiss). This Court denied that motion in a text-only order.

China Lite brought its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief may be granted) and 12(c) (motion for judgment on the pleadings). The Government brought its motion seeking to dismiss China's lite's purported counterclaims under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim).

In addressing China Lite's Motion to Dismiss raising the timeliness issue, however, both parties submitted materials outside the pleadings.  Fed. R. Civ. P. 12(d) provides:

> **(d) Result of Presenting Matters Outside the Pleadings.**  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).   On October 4, 2013, this Court issued a Notice to the parties (Docket Entry No. 37), advising that the Court intends to treat China Lite's Motion to Dismiss, as to the timeliness challenge, as a motion for summary judgment. That Notice further provided that if either party wished to submit additional evidence in support of their respective positions they could do so no later than October 11, 2013.  (*Id*.).  Thus, this Court shall therefore treat China Lite's motion as a motion for summary judgment under Fed. R. Civ. P. 56(c).

## ANALYSIS

### I.      China Lite's Motion

China Lite's Motion seeks to dismiss the Government's Forfeiture Complaint on several grounds.

### A.      Was The Forfeiture Complaint Filed Beyond The Limitations Period In The Statute?

7

First, China Lite contends the Complaint for Forfeiture was filed beyond the time allowed by law.

After property is seized, 18 U.S.C. § 983 provides that any person who claims that property "seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure."  18 U.S.C. § 983(a)(2)(A).

The statute provides that the claim "need not be made in any particular form," but the claim shall: 1) "identify the specific property being claimed;" 2) "state the claimant's interest in such property;" and 3) "be made under oath, subject to penalty of perjury."  18 U.S.C. § 983(a)(2)(C) and (D).

The statute provides that *"[n]ot later than 90 days after a claim has been filed*, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties."  18 U.S.C. § 983(a)(3)(A) (emphasis added).

It further provides that if the Government does not file a complaint for forfeiture or return the property, or pursue a criminal matter or criminal forfeiture, in accordance with the above subparagraph, then the Government "shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."  18 U.S.C. § 983(a)(3)(B).

China Lite's brief states that it filed two different claims, one on December 7, 2012, and

8

another one on January 15, 2013.

### 1. The December 7, 2012 Claim

China Lite filed is first claim for the seized property on December 7, 2012. (*See* Ex. 1 to China Lite's Br.). It contends that this action, filed on April 17, 2013, is untimely because it was clearly filed more than 90 days after that claim was filed.

In responding to China Lite's motion, the Government ignored this first claim, without explaining why it believes the claim was invalid or insufficient. The Court then ordered supplemental briefing and the Government has since stated its position as to the first claim. It contends that the claim is irrelevant to the analysis because the December 2012 claim was insufficient because it was not sworn to by the claimant. There is some support for that proposition. The Government directs the Court to *In re Seizure of $143,256.78*, 384 Fed. App'x. 471 (6th Cir. 2010); *United States v. Thompson*, 351 F.Supp.2d 692 (E.D. Mich. 2005); and *Manjarrez v. United States*, 2002 WL 31870533 (N.D. Ill. 2002).

The statute itself states that a claim shall: "(i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." 18 U.S.C. § 983 (a)(2)(A). While the statute does not expressly state that the claim must be signed under oath by the claimant, that is implied, at least in instances where the claimant is an individual. And the Sixth Circuit has so interpreted the statute in cases where the claimant is an individual. *See, e.g., United States v. Thompson*, 351 F.Supp.2d 692 (E.D. Mich. 2005); *Manjarrez v. United States*, 2002 WL 31870533 (N.D. Ill. 2002); *United States v. Currency $267,961.07*, 916 F.2d 1104 (6th Cir. 1990); *United States v. One Men's Rolex Pearl Master Watch,* 357 Fed. App'x. 624 (6th Cir. 2009).

The claimant was a bank, rather than an individual, in *In re $143,256.78*. The bank claimed that letters and e-mails that its attorney sent to a United States Attorney regarding the seized funds constituted claims. The Sixth Circuit rejected that claim, stating:

> Comerica Bank's attorney's email and letter to the AUSA do not constitute a claim to the funds seized because these communications *were not "made under oath*, subject to penalty of perjury" as 18 U.S.C. §983(a)(2)(C) requires. *Generally*, an attorney's signature does not fulfill a client's oath requirement because the oath must be made by a person with personal knowledge of the facts alleged therein. *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990); *United States v. One Men's Rolex Pearl Master Watch*, 357 Fed.Appx. 624, 628 (6th Cir. 2009). Moreover, the email and letter *were not in the form of a claim*.

*Id.* at 475 (emphasis added). The Sixth Circuit did not elaborate on the circumstances wherein an attorney's signature made under oath could suffice, and in that case the communications were not in the form of a claim or signed under oath by the bank's attorney. Here, in contrast, the December 2012 claim was sworn to by Dunn under oath and was in the form of a claim.

Although the Sixth Circuit did not expound on the circumstances when an attorney's signature under oath would suffice, it suggested that it would be when an attorney has personal knowledge of the facts alleged in the claim. The statute only requires that a claim "identify the specific property being claimed" and "state the claimant's interest in such property." The December 2012 claim identifies the property being claimed as the two bank accounts seized and state's the claimant's interest in the funds (i.e., the funds were seized from China Lite's bank accounts). The claim also discusses the meeting that Dunn and his client had with A.U.S.A. Grey regarding the seizures. Thus, this may be one of those rare circumstances wherein it is sufficient for the corporate claimant's attorney to sign the claim under oath because he has personal knowledge of the required contents of the claim.

Were the December 2012 claim the only claim China Lite filed, this would be a close call, based on the cases this Court has reviewed.

### 2.    January 15, 2013 Claim

But it is undisputed that China Lite also filed a *second claim*.  Its attorney mailed it on January 15, 2013, and the return receipt shows it was received by the I.R.S. on January 16, 2013. (*See* Ex. 2 to China Lite's Motion).  China Lite's motion asserts that this forfeiture action must be dismissed because it was not filed until April 17, 2013 – more than 90 days after it filed its claim.

The statute at issue provides that "[n]ot later than *90 days after a claim has been filed*, the Government *shall* filed a complaint for forfeiture." 18 U.S.C. § 983(a)(3)(A) (emphasis added). It also provides just one exception for that deadline, stating that "except that a *court in the district in which the complaint will be filed may* extend the period for filing a complaint for *good cause shown* or upon agreement of the parties."  (*Id*.) (emphasis added)

The Government's response raises two issues: 1) when is a claim considered "filed" for purposes of the statute; and 2) if the Government did not file within 90 days, whether this Court may or should extend the time for filing for "good cause."

### a.    When Is A Claim "Filed" For Purposes Of The Statute?

China Lite mailed its second claim on January 15, 2013, and it was received by the I.R.S. on January 16, 2013.  China Lite notes that if you use the January 16, 2013 date as the date the claim was filed, then the Government had to file its forfeiture action on April 16, 2013 – but it filed it on April 17, 2013, a day late.  If you use the January 15, 2013 mailing date, the action was filed two days late.

11

In response, the Government argues that the date a claim is actually received by the office of the person handling the claim at issue within the I.R.S. should be deemed the date the claim is "filed." (Govt.'s Br. at 11, "Regardless of what China Lite's airbill indicates as to the date its claim was delivered to someone, the relevant recipient at IRS-CI actually received the claim for processing on January 17, 2013;" *see also* 10/31/13 Hrg. Tr.). The Government did not submit an affidavit from Robinson stating when she received the claim, but rather, refers the Court to a copy of Dunn's January 15, 2013 letter that was stamped by someone as being "received" on January 17, 2103.

In support of its position, the Government directs the Court to several, mostly unpublished, district court decisions from outside the Sixth Circuit: 1) *United States v. 2005 Dodge Magnum,* 2008 U.S. Dist. LEXIS 54403 (E.D. Mo. 2008) (Ex. 10 to Govt.'s Br.); 2) *United States v. $800,127.70*, 2005 U.S. Dist. LEXIS 41287 (D.D.C. 2005)(Ex. 10 to Govt.'s Br.) ; 3) *United States v. One Yukon Denali*, 2003 U.S. Dist. LEXIS 27082 (C.D. Cal. 2003)(Ex. 12 to Govt.'s Br.) ; and 4) *United States v. $39,480.00*, 190 F.Supp.2d 929, 931 (W.D. Tex. 2002) (Ex. 10 to Govt.'s Br.). None of the above cases are binding on this Court and this Court does not find them persuasive.

Neither this Court nor the Government were able to locate any Sixth Circuit authority on this issue. There are at least three potential options for when a claim should be deemed "filed" for purposes of the statute: 1) when the claimant mails the claim; 2) when the claim is received by the seizing agency; or 3) the Government's argument, that a claim is not filed until it is actually received by the person within the seizing agency who is handling the seizure at issue.

This Court finds the Government's position to be untenable because it would, as a

12

practical matter, eviscerate the 90-day limitation period imposed on the Government. For example, as the Government acknowledged at oral argument, if a claim were received by the seizing agency, but then sat in the mailroom for two weeks before being delivered to the person handling the seizure, the 90-day period would be extended for two weeks. The same would be true if the person handling the seizure were out sick, on vacation, on maternity leave, etc.

This Court concludes that the better interpretation is that a claim is filed when it is actually received by the seizing agency. *See, e.g., United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) (stating that the Government "has ninety days from the date the claim was received by the seizing agency to file a civil complaint, obtain a criminal indictment that includes an allegation that the property is subject to forfeiture, or both."); *Bentley v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 414 Fed. App'x. 28, 32 (9th Cir. 2011) (concurring opinion stating that a "claim is 'filed' when it is received by the seizing agency, not when it is mailed."); *United States v. $65,930.00 in U.S. Currency,* 2006 WL 923704 (D. Conn. 2006) (Accepting the Government's position that a claim is "filed" when it is received by the seizing agency); *United States v. $36,110.00 in U.S. Currency*, 2009 WL 692830 (D. S.C. 2009) (same).

Here, China Lite's Second Claim was received by the seizing agency on January 16, 2013. As a result, the Government filed this forfeiture action one day past the 90-day limitation period.

**b.      May This Court Extend The Period For Good Cause Shown?**

The Government contends that even if it failed to file within the 90-day limitations

period, the Government can demonstrate sufficient cause to prevent dismissal:

> Even if the court were to find that the "receipt" date for claimant's administrative claim was January 16 or any date earlier than January 17, the government can demonstrate sufficient cause to prevent dismissal since it had a reasonable belief that it complied with 18 U.S.C. § 983 and timely filed its complaint. The referral from IRS-CI (see Ex. 4) did not contain any indication when the claim was received in the IRS-CI mailroom and only contained the date-stamp of the asset forfeiture office at IRS-CI of January 17, 2013 and Martinez's statement that the claim was received January 17, 2013 by the IRS-CI. The government never received any document from IRS-CI indicating any receipt date other than January 17, 2013. Accordingly, claimant's motion to dismiss cannot prevail concerning the date its administrative claim was received at IRS-CI.

(Govt.'s Br. at 13).

China Lite responds that this Court has no discretion to extend the limitations period and, even if it did, it is not warranted here. (China Lite's Reply at 3).

Again, the statute provides the following as the only exception to the 90-day filing requirement imposed on the Government: "except that a *court in the district in which the complaint will be filed may* extend the period for filing a complaint for *good cause shown* or upon agreement of the parties." (*Id.*) (emphasis added). This language suggests three things: 1) the statute allows the Government to seek an extension of time *before* the 90-day period expires (a court in the district "in which the complaint *will be* filed" may grant an extension); 2) the Government must show cause good for the requested extension ("for good cause shown"); and 3) in any event, the matter is discretionary with the Court (the court "may" grant an extension).

### 1)    The Government Must Seek The Extension Before The Limitations Period Expires

The language used in the statute appears to indicate that the Government must seek the

extension before the limitations period expires.

Under the CAFRA, a district court is authorized to grant *ex parte* extensions of the deadline for government to file civil forfeiture complaint.  *See, e.g., United States v. Real Property Located at 475 Martin Lane*, 545 F.3d at 1141.  This is something the Government may pursue before the expiration of the 90-day period for filing a complaint.  *See, e.g.*, *United States v. $10,160.00 in U.S. Currency*, 2012 WL 3608578 (D. Conn. 2012) (where the Government initiated the case by filing a motion to extend the time for filing a forfeiture action.)

Because of the language used in phrasing this sole exception, some courts have construed it as allowing the Government to seek an extension before the limitations period for filing a forfeiture action expires, not to seek a "retroactive extension" after the limitations period has expired.  *See, e.g., United States v. One 1991 Ford Mustang LX*, 909 F.Supp. 831, 833-34 (D. Colo. 1996); *United States v. One White 1987 Tempest Sport Boat Named "El Matador,"* 726 F.Supp. 7, 9 (D. Mass. 1989); *United States v. 1986 Ford Bronco*, 782 F.Supp. 1543 (S.D. Fla. 1992); *see also United States v. $1,073,200.00,* 2007 WL 1017317 (N.D. N.Y. 2007).

Given the narrow language used the statute, this Court concludes that the Government has to seek the extension before the limitations period passes and that it cannot seek a "retroactive extension."

### 2)      Good Cause Is The Standard – Not "Good Faith" Mistake

Although this Court need not reach the good cause issue, given its above conclusions,

this Court also concludes that the Government has not met its burden of establishing good cause.

Again, the only exception to the 90-day filing requirement is the provision that "except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown upon agreement of the parties."  Here, there was no agreement among the parties for any extension and, therefore, the Government must establish "good cause" for its requested extension.

The statute does not define what constitutes "good cause" and the Government's Brief does not discuss what constitutes good cause under the statute.

The district court in *United States v. $10,160.00 in U.S. Currency*, 2012 WL 3608578 (D. Conn. 2012) looked at this issue.  In that case, the Government commenced the action by filing a Motion for Extension Of time in which it asserted that additional time was needed to file the forfeiture claim because it required further information from the DEA.  *Id*. at *1.  Thus, the Government was seeking an extension of time to file the forfeiture complaint, asserting that it had good cause for the requested extension.  In discussing the good cause standard for granting the requested extension, the district court explained:

> While the Second Circuit has not specifically defined "good cause" in the forfeiture context, it has stated that the primary consideration in determining whether good cause has been shown is whether the moving party can demonstrate diligence.  *Kassner v. 2nd Avenue Delicatessen, Inc.,* 496 F.3d 229, 244 (2d Cir. 2007).  Congress debated the meaning of the term while crafting the Civil Asset Forfeiture Act (CAFRA). The "good cause" language that was ultimately codified into 18 U.S.C. §983(a)(3)(A) was derived from situations in which the filing of the complaint within the 90 day deadline might interfere with an ongoing criminal investigation, or endanger witnesses or undercover operations.  1997 House Committee Report, *Legislative History of Civil Asset Forfeiture Reform Act (CAFRA) of 2000*, published by the U.S. Department of Justice (May 2000) at 251.

16

*Id.* at *3.  The district court found good cause for the requested extension because "[n]ot allowing the Government time to obtain additional information from the DEA could have interfered with an ongoing criminal investigation related to the immediate forfeiture matter, a situation specifically contemplated by Congress when it passed CAFRA."  *Id.*

Here, the Government failed to seek an extension before the 90-day period expired and its requested extension is not based on any alleged interference with an ongoing criminal investigation.  Rather, the Government is asking the Court to excuse its failure because it was based on a good faith mistake.  But that is not the standard in the statute, nor is it the intended purpose behind the exception.

Nevertheless, at least one district court has excused such a late filing, finding that filing late based on a good faith error merits tolling the limitations period.  *See United States v. $39,480.00 in U.S. Currency*, 190 F.Supp.2d at 931-32 (although the Government conceded it filed one day late, court hesitated to "strictly construe" the requirement and denied motion to dismiss).  This Court declines to follow that approach because  "[i]f non-governmental claimants are held to a high standard of forgiveness for their failure to act within statutory deadlines, fundamental fairness requires that the government be held to the same standard."  *United States v. One White 1987 Tempest Sport Boat Named "El Matador*,*"* 726 F.Supp. at 10.

### 3)        The Decision Is Discretionary In Any Event

Moreover, even if this Court has the discretion to grant the Government a "retroactive extension" for filing its forfeiture complaint, the Court does not believe that it should do so

under the somewhat unusual circumstances of this case.

As thoughtfully explained by a district court that ultimately decided to forgive a late filing by the Government, the Court should start with the following principles in mind:

> [A]s a general rule, forfeitures are not favored by the law and statutes providing for forfeitures are strictly construed. Furthermore, the Court understands that the current statutory deadlines were meant to remedy the pre-CAFRA reality, in which statutory deadlines for the commencement of civil forfeiture proceedings were absent. "The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government." The purpose of the ninety-day time period in section 983, then, is to prevent the government from retaining property subject to forfeiture "for an extended period without commencing a judicial action that will give the claimant his day in court."

*United States v. $39,480.00 in U.S. Currency*, 190 F.Supp.2d 929, 931-32 (W.D. Tex. 2002) (quoting Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. LEGIS. 97, 122 (2001)).

The Government seized the funds at issue here from China Lite's bank accounts, which total $135,595.66, on November 19, 2012.

Following the seizure, China Lite's owners promptly retained a lawyer and sought to claim the funds at issue. In early December of 2012, China Lite's lawyers spoke with both Robinson (the I.R.S.'s Asset Forfeiture Coordinator in Detroit) and Grey (the same attorney representing the Government in this case) about the seizure and China's Lite's claim to the funds. Grey also met with China Lite's attorney and client representative in person in December of 2012.

18

Thus, by mid-December of 2012, both Robinson and Grey had actual knowledge that China Lite had hired an attorney to file a formal claim for the funds and was pursing a formal claim.

In addition, at the request of the I.R.S., China Lite then submitted another formal claim on January 15, 2013, which was received by the I.R.S. on January 16, 2013.

Under these circumstances, the Government has retained the property – a significant amount of money seized without any criminal charges having been filed against China Lite or its owners – for an extended period before commencing a judicial action giving China Lite its day in court.

Accordingly, for all of the above reasons, this Court shall GRANT China Lite's Motion to Dismiss/Motion for Summary Judgment and shall dismiss the forfeiture Complaint in this case as untimely.[3]

Pursuant to 18 U.S.C. § 983(a)(3)(B), in situations like this where the Government does not file a timely complaint for forfeiture, "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." As a result, the statute requires this Court to ORDER that the funds be returned to China Lite, and that no forfeiture may take place.

---

[3]China Lite's motion raises alternative grounds for relief including: 1) whether 31 U.S.C. § 5324(a) applies where there is no underlying substantive offense of drug trafficking; and 2) whether the complaint should be dismissed for failure to allege the *mens rea* required for a violation of 31 U.S.C. § 5324(a).  Because the Court is dismissing the forfeiture complaint on timeliness grounds, the Court need not address those alternative grounds for dismissal.

**B.      Should The Court Award Claimant Attorney Fees And Costs Under 18 U.S.C. § 2465(B)(1)?**

China Lite's motion asserts that if the Court grants is motion to dismiss, it will have "substantially prevailed" in this action and the Court should therefore award it is attorney fees under 28 U.S.C. § 2465(b)(1).  (China Lite's Br. at 21-22).  China Lite's Brief asserts that Sioe Cheung is entitled to an award of attorney fees, although the actual claimant is China Lite.  (*See* China Lite's Br. at 22).  China Lite asks the Court for leave to file a petition for attorney fees if its motion is granted.  (*Id.*).

The Government did not respond to China Lite's request regarding attorney fees, so its position as to an attorney fee award is currently unknown.

The Court concludes that China Lite should be permitted to file a motion seeking attorney fees and interest.  China Lite shall file such motion no later than **November 14, 2013.** The Government shall file any response to that motion no later than **December 2, 2013**, and China Lite may file a reply brief no later than **December 9, 2013.**

**II.      The Government's Motion to Dismiss Claimant's "Amended Counterclaim"**

In its Motion to Dismiss, the Government seeks to dismiss China Lite's purported counterclaims on several grounds: 1) a claimant may not file counterclaims in a civil forfeiture case; 2) sovereign immunity may bar claimant's purported counterclaims; and 3) the claim under the Administrative Procedures Act is barred because there was no final agency action and there exists another adequate remedy.

As explained below, the Court concludes that the Government's first argument has merit

20

and shall grant the Government's motion without addressing the Government's alternative grounds for relief.

The Government's brief asserts that a claimant in a civil forfeiture action, such as China Lite, cannot file counterclaims in the civil forfeiture action. The Government directs the Court to

*United States v. Assorted Computer Equipment*, 2004 WL 784493 (W.D. Tenn. 2004).

While this Court has not found any Sixth Circuit cases dealing with the issue, a number of district courts, including two district courts within the Sixth Circuit, have ruled that a claimant cannot file a "counterclaim" in a civil forfeiture action. *See e.g., United States v. Assorted Computer Equipment, supra*; *United States v. $22,832.00 in U.S. Currency*, 2013 WL 4012712 (N.D. Ohio 2013); *United States v. $43,725.00 in U.S. Currency*, 2009 WL 347475 (D.S.C. 2009); *United States v. 1866.75 Board Feet*, 2008 WL 839792 (E.D. Va. 2008).

As explained in the above cases, this is because a forfeiture proceeding is *in rem*, not *in personam*. The property at issue, the two funds here, are the defendants, not a claimant. By definition, a counterclaim is pleading which sets forth a claim that the pleader has against an opposing party arising out of an opposing party's claim against the pleader. *Id.*; *see also* Fed. R. Civ. P. 13. This action was not brought against China Lite and the Government has not asserted any claims against China Lite. Rather, China Lite chose to intervene as a claimant to the *in rem* defendant funds. As such, it is not entitled to file counterclaims in the instant action. Any claims it has against the Government, if permissible, must be filed as a separate action.

**CONCLUSION & ORDER**

21

As explained above, this Court concludes that the Government did not comply with the 90-day requirement for filing its Forfeiture Complaint and denies its request for an extension of time.  Accordingly, IT IS ORDERED that China Lite's Motion to Dismiss/Motion for Summary Judgment is GRANTED and the Forfeiture Complaint is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the seized funds at issue in this case (Funds from Fifth Third Bank Account #0065006695 in the amount of fifty nine thousand six hundred seventy five dollars and three cents ($59,675.03) in the name of China Lite Restaurant and Funds from Fifth Third Bank Account #0065010611 in the amount of seventy five thousand nine hundred twenty dollars and sixty three cents ($75,920.63) in the name of China Lite Restaurant) be PROMPTLY RETURNED to China Lite.

IT IS FURTHER ORDERED that: 1) China Lite may file a motion seeking attorney fees and/or interest no later than **November 14, 2013**; 2) the Government shall file any response to that motion no later than **December 2, 2013**; and 3) China Lite may file a reply brief no later than **December 9, 2013.**

IT IS FURTHER ORDERED that the Government's Motion to Dismiss Claimant's Amended Counterclaim is GRANTED and China Lite's Counterclaims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  November 4, 2013

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                     Case No.  13-11728

Funds From Fifth Third Bank Account           Sean F. Cox
#0065006695 In The Amount Of Fifty Nine       United States District Court Judge
Thousand Six Hundred Seventy Five Dollars
And Three Cents ($59,675.03), *et al.*,

      Defendants in Rem.

_____/

PROOF OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record on November 4, 2013, by electronic and/or ordinary mail.

                            S/Jennifer McCoy_____
                            Case Manager

23